# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER D. PLAXE, | CIVIL ACTION |
| *Plaintiff*, | |
| v. | No. 17–1055 |
| STEVEN R. FIEGURA, *et al.*, | |
| *Defendants*. | |

Goldberg, J.                                                                            April 27, 2018

## MEMORANDUM OPINION

This dispute stems from an automobile accident that occurred in Pike County, Pennsylvania, involving two drivers who are citizens of Pennsylvania: Plaintiff, Christopher Plaxe, and one of two Defendants in this action, Steven Fiegura ("Defendant Fiegura"). The other Defendant is the manufacturer of the vehicle Plaintiff was driving, Chrysler Group LLC ("Defendant Chrysler"), which is not a citizen of Pennsylvania.

More than one year after Plaintiff filed this action in state court, Defendant Chrysler removed to this Court. Citing the expiration of the one-year deadline to remove set out in 28 U.S.C. § 1446(c)(1), Plaintiff has moved to remand to state court and for his related attorneys' fees. Defendant Chrysler responds that an exception to the one-year deadline applies, as Plaintiff acted in bad faith to prevent timely removal, by prolonging his claim against Defendant Fiegura after they had effectively settled. For the reasons that follow, I will remand this action to state court, but will deny Plaintiff's request for related attorneys' fees.

I.      **FACTUAL & PROCEDURAL BACKGROUND**

The following facts are derived from Defendant Chrysler's Notice of Removal, Plaintiff's Motion to Remand, the responses and replies thereto, and the exhibits attached to each.[1] Except where noted, these facts are undisputed.

Plaintiff and Defendant Fiegura were involved in a motor vehicle accident on October 16, 2013, in Pike County, Pennsylvania. The accident allegedly left Plaintiff partially paralyzed and wheelchair-dependent. (Pl.'s Mot. to Remand, ¶ 2; Id., Ex. A, ¶¶ 21, 25-26.)

On May 19, 2014, Plaintiff filed a complaint in the Philadelphia County Court of Common Pleas, naming Defendant Fiegura as the sole Defendant and asserting a negligence claim against him. Plaintiff promptly served the complaint on Defendant Fiegura, who filed an answer. (Chrysler's Resp., Exs. B, H.)

At some point during the next few months, before October 13, 2014, Plaintiff and Defendant Fiegura reached an agreement that they did not reduce to writing, but which Defendant Fiegura's counsel reported to his insurance company. Under this agreement, Plaintiff agreed to not seek damages against Defendant Fiegura in excess of $50,000, the limits of his insurance policy. In return, Defendant Fiegura agreed that he would not contest venue in the Philadelphia County Court of Common Pleas.[2] (Chrysler's Supp. Br., Exs. A-C.)

By that time, Plaintiff had informed Defendant Fiegura that he would also be pursuing a claim against Defendant Chrysler. Accordingly, as part of their agreement, Defendant Fiegura

---

[1] In deciding a Motion to Remand, a district court may rely on material outside of the complaint. See, e.g., Erie Ins. Exch. v. Greenwich Ins. Co., No. 16-00015, 2016 WL 1404162, at *3 n.3 (E.D. Pa. Apr. 11, 2016); Russo v. Abington Memorial Hosp., 881 F. Supp. 177, 182 (E.D. Pa. 1995) (holding that, because it is "sometimes necessary for a court to make certain factual findings" in ruling on a motion to remand, it is appropriate "to rely on affidavits and other documents").

[2] Both Plaintiff and Defendant Fiegura are residents of Pike County, Pennsylvania, and the accident occurred in Pike County, Pennsylvania. (Pl.'s Mot. to Remand, Ex. A, ¶ 21 & Notice to Defend.)

2

also agreed not to side with Defendant Chrysler in contesting venue in the Philadelphia County Court of Common Pleas, once it became a party to the action.[3] (Chrysler's Supp. Br., Exs. A-C.)

Plaintiff did not add Defendant Chrysler to the existing action, but rather, on August 13, 2015, filed a second lawsuit in the Philadelphia County Court of Common Pleas. Plaintiff's second suit named both Defendant Fiegura and Defendant Chrysler, reasserting Plaintiff's negligence claim against Defendant Fiegura and asserting products liability and negligence claims against Defendant Chrysler.[4] Defendant Fiegura did not object to the filing of a second suit, and appears to have accepted service of the newly filed complaint.[5] (Pl.'s Mot. to Remand, Ex. A, ¶ 29-45; Chrysler's Supp. Br., Ex. C.)

Defendant Chrysler, which is not a citizen of Pennsylvania, did not attempt to remove the action at the outset, presumably in light of the presence of Defendant Fiegura, a non-diverse defendant. Instead, Defendant Chrysler answered the suit and asserted a cross-claim against Defendant Fiegura for contribution and indemnification. (Pl.'s Mot. to Remand, Ex. B, ¶ 82-84.)

On December 28, 2015, the state court entered a Case Management Order, setting a March 6, 2017, deadline to complete discovery. The discovery deadline was subsequently extended to May 1, 2017. (Chrysler's Not. of Removal, Ex. C, Doc. No. 1 at 42-43, 75; Pl.'s Mot. to Remand, Ex. C, Doc. No. 6-3 at 8, 15-16.)

---

[3] As discussed below, the parties dispute whether Plaintiff and Defendant Fiegura had any agreement regarding whether the case would be removed to federal district court once Defendant Chrysler became a party.

[4] The first suit remained open for another six months, until February 16, 2016, when Plaintiff filed a Praecipe to Discontinue. (Chrysler Resp., Ex. H, Doc. No. 8-3 at 29.)

[5] In a September 10, 2015, letter to Defendant Fiegura's insurer, Defendant Fiegura's counsel wrote that, "based on [the insurer's] authority, [he] w[ould] proceed to accept service [of the newly filed complaint]." (Chrysler's Supp. Br., Ex. C.)

On February 21, 2017, Plaintiff executed a "Joint Tortfeasor Release," releasing his claims against Defendant Fiegura in exchange for the $50,000 limits of Defendant Fiegura's insurance policy.[6] After learning of this settlement from Plaintiff's counsel during a deposition of Plaintiff taken the following day, Defendant Chrysler removed the suit to this Court on the basis of diversity jurisdiction. Despite the settlement, Defendant Fiegura has remained a party to this action. (Pl.'s Mot. to Remand, Ex. E; Chrysler's Not. of Removal, ¶ 19.)

On April 4, 2017, Plaintiff filed the instant Motion to Remand and Request for Related Attorneys' Fees. Defendant Chrysler has responded and filed a supplemental brief, to which Plaintiff has filed a reply. The matter is now ripe for decision.

## II.  LEGAL STANDARD

District courts have original jurisdiction whenever: (1) the amount in controversy exceeds $75,000 and (2) the matter in controversy is between citizens of different states. 28 U.S.C. § 1332(a). However, because § 1332(a) requires "complete diversity," if any plaintiff is a citizen of the same state as any defendant, the district court does not have jurisdiction. See Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 419 (3d Cir. 2010).

When an action over which a district court would have diversity jurisdiction is brought in state court, a defendant may remove to district court. See 28 U.S.C. § 1441(a). And even when a case is not initially removable to district court, a defendant may remove if and when the case later becomes removable. See 28 U.S.C. § 1446(b)(3). However, a case may not be removed on the basis of diversity jurisdiction "more than [one] year after the commencement of the action,

---

[6] While the amount of the payment required by the Joint Tortfeasor Release is redacted from the copy attached to Plaintiff's Motion to Remand, Plaintiff's Motion itself notes that "a careful decision was reached to resolve, *for policy limits*, all claims against Defendant Fiegura." (Pl.'s Mot. to Remand, ¶ 9 n.7 (emphasis added.))

4

*unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.*" 28 U.S.C. § 1446(c)(1) (emphasis added).

This "bad faith" provision was added to the removal statute as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011. See Ehrenreich v. Black, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014). "As Congress explained, the intent behind [the provision] was to clarify ambiguity in the case law concerning whether the one-year limitation [for removal] in § 1446(c) was jurisdictional or procedural," clarifying that "the limitation is procedural," and thus "excusable by federal courts upon a proper showing of bad faith." Id. (citing H.R. Rep. No. 112-10 at 15); Rulis v. LA Fitness, No. 13-cv-1582, 2015 WL 1344745, at *2 (E.D. Pa. Mar. 24, 2015) (noting that the bad faith provision "is a recent codification of a slightly more expansive, judicially created 'equitable tolling' of the former statute"). Before the enactment of the bad faith provision, the United States Court of Appeals for the Third Circuit was among those courts that had concluded that the one-year deadline was procedural, and thus waivable for equitable reasons. See A.S. ex rel. Miller v. SmithKline Beecham Corp., 769 F.3d 204, 211 (3d Cir. 2014).

While few courts within the Third Circuit have addressed what constitutes "bad faith" under the current version of § 1446(c)(1), see Venuto v. Ford Motor Co., No. 14-cv-02898, Or. (Doc. No. 22) at 3 n.1 (E.D. Pa. Jan. 21, 2015) (noting that "because th[e] amendment was recently enacted, there is limited case law concerning what constitutes bad faith to prevent removal"), several district courts within this Circuit have addressed the issue in determining whether, under the previous version of the removal statute, the one-year deadline for removal should be waived for equitable reasons. See, e.g., Namey v. Malcolm, 534 F. Supp. 2d 494, 498 (M.D. Pa. 2008) (declining to equitably waive the one-year deadline for removal and noting that removing defendant had failed to demonstrate "intentional conduct on the part of the plaintiffs to

5

circumvent removal") And "[f]ederal courts that have examined the new language agree that the issue is whether the plaintiff engaged in intentional conduct to deny the defendant the chance to remove the case to federal court." Hiser v. Seay, No. 14–cv–170, 2014 WL 6885433, at *4 (W.D. Ky. Dec. 5, 2014).

Courts have noted that a plaintiff's bad faith in preventing removal may be ascertained by circumstantial evidence. In re Asbestos Prods. Liab. Litig. (No. VI) ("In re Asbestos"), MDL No. 875, 2016 WL 4264193, at *2 (E.D. Pa. Aug. 11, 2016) (noting that because "it would be extraordinary for a party directly to admit a bad faith intention, his motive must of necessity be ascertained from circumstantial evidence" (internal quotation marks omitted)). However, "[b]ecause a party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists," and because "all doubts should be resolved in favor of remand," Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d. Cir. 1990), a removing party who contends that the plaintiff acted in bad faith to prevent removal bears a "heavy burden of persuasion," cf. id. (holding that a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity jurisdiction has a "heavy burden of persuasion"); see also Rulis, 2015 WL 1344745, at *2 (noting that a removing defendant bears a "high burden of proof" to show bad faith under § 1446(c)(1)).

If remand is warranted, attorneys' fees and costs may be awarded to the remanding party. 28 U.S.C. § 1447(c). However, such fees and costs are generally appropriate "only where the [the removing party] lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

### III. DISCUSSION

    A. *Whether Defendant Chrysler Has Met Its Burden of Establishing That Plaintiff Acted in Bad Faith to Prevent Removal*

There is no dispute that Defendant Chrysler filed its Notice of Removal more than one year after this action was commenced in state court. Thus, Plaintiff's Motion to Remand will be granted unless Defendant Chrysler can meet its burden of establishing that Plaintiff acted in bad faith in order to prevent timely removal to federal court.

Defendant Chrysler does not contend that Plaintiff never had a colorable claim against Defendant Fiegura and merely asserted such a claim to destroy complete diversity.[7] Rather, Defendant Chrysler contends that Plaintiff acted in bad faith by prolonging his claim against Defendant Fiegura until after the one-year deadline for removal had passed, in order to prevent Defendant Chrysler from removing to federal court. In support of its position, Defendant Chrysler makes three arguments: (1) that Plaintiff and Defendant Fiegura had effectively reached a settlement, as early as October 2014, whereby Defendant Fiegura would pay Plaintiff his insurance policy limits, but refused to formalize that agreement until after the one-year deadline for removal had passed; (2) that Plaintiff failed to seek any discovery from Defendant Fiegura before finally formalizing their settlement; and (3) that Plaintiff initiated a second suit that duplicated Plaintiff's claim against Defendant Fiegura while adding Defendant Chrysler, instead of filing a separate suit against Defendant Chrysler alone. For the reasons that follow, I conclude that these arguments do not carry Defendant Chrysler's heavy burden of demonstrating that Plaintiff acted in bad faith to prevent timely removal.

---

[7] Accordingly, Plaintiff's arguments that he had a colorable claim against Defendant Fiegura, that Defendant Chrysler had (and still has) cross-claims against Defendant Fiegura, and that these claims belie Defendant Chrysler's position that Plaintiff acted in bad faith, miss the point of Defendant Chrysler's argument.

1. <u>Settlement for Defendant Fiegura's Policy Limits</u>

At some point before October 13, 2014, ten months before the second action was filed in state court, Plaintiff and Defendant Fiegura reached an agreement. While Plaintiff and Defendant Fiegura avoided reducing the agreement to writing, the substance of the agreement is set out in three letters sent by Defendant Fiegura's counsel, Joseph Mayers, to Defendant Fiegura's insurer, USAA.

In the first letter, dated October 13, 2014, Mr. Mayers wrote that he had "confirm[ed]" with Plaintiff's counsel an "agreement that was previously reached." Mr. Mayers noted that, under this agreement, "[P]laintiff will agree to accept [the insurer's] policy limit in resolution of the case and will not pursue [Defendant Fiegura's] assets. In exchange for this promise, we [i.e. Defendant Fiegura] will not attempt to remove this case for venue purposes nor will we side with [Defendant] Chrysler in this regard." Mr. Mayers added that "[o]f course, we cannot enter into a formal agreement in this regard as it could potentially impact venue." Mr. Mayers concluded by noting that "we [i.e. Defendant Fiegura] will essentially maintain a low profile in the defense of this claim." (Chrysler's Supp. Br., Ex. A.)

In a second letter the following month, dated November 13, 2014, Mr. Mayers provided the insurer an "initial case analysis." In it, Mr. Mayers reaffirmed the agreement described in the previous letter, and noted that "as you [the insurer] know[s], Plaintiff intends to bring suit against [Defendant] Chrysler . . . ." Later in the letter, Mr. Mayers noted that "[v]enue is currently in Philadelphia County but could be properly removed to Pike County. However, as you [the insurer] know[s], we [i.e. Defendant Fiegura] have agreed not to raise venue on the basis that Plaintiff will accept [Defendant Fiegura]'s policy limits and not require us to participate extensively in this litigation." (Chrysler's Supp. Br., Ex. B.)

8

Finally, in a third letter to the insurer dated September 10, 2015—shortly after the second suit was initiated—Mr. Mayers reiterated the agreement, stating "We [i.e. Defendant Fiegura] ultimately reached an agreement with [P]laintiff's counsel that cannot be confirmed in writing that [P]laintiff would accept our $50,000 to resolve any and all exposure on behalf of [Defendant] Fiegura at either the settlement of this case or after trial of this matter. As you know, in exchange for this agreement, we have agreed not to seek a change of venue from the Philadelphia Court of Common Pleas." (Chrysler's Supp. Br., Ex. C.)

Defendant Chrysler contends that these letters are direct evidence that Plaintiff deliberately avoided formalizing the settlement with Defendant Fiegura in order to prevent Defendant Chrysler from being able to remove to federal court. Plaintiff responds that these letters show only that Plaintiff and Defendant Fiegura reached an agreement as to which county—Philadelphia County or Pike County—would be the *state*-court venue, and do not demonstrate any effort to prevent Defendant Chrysler from removing the case to *federal* court.

I disagree with Defendant Chrysler's contention that these letters are direct evidence of Plaintiff's intent to prevent removal to federal court, as the letters do not discuss removal to federal court. While the letters use the term "removal," there is no indication that this term is used to refer to anything other than a shift of venue from Philadelphia County to Pike County. For example, in the November 13, 2014, letter, Mr. Mayers wrote that "[v]enue is currently in Philadelphia County but could be properly *removed* to Pike County." (Chrysler's Supp. Br., Ex. B (emphasis added.))

As to why Plaintiff avoided formalizing a settlement with Defendant Fiegura at the time of this unwritten agreement, Plaintiff contends that the reasons "are understandably numerous." However, Plaintiff specifically identifies only one such reason: that without Defendant Fiegura

9

as a party, Defendant Chrysler could, at trial, put on an "empty-chair" defense, in which a remaining defendant "diminish[es] [its] proportionate share of liability by heaping responsibility on a settled party." (Pl.'s Reply Br. 5.)

I find Plaintiff's explanation to be plausible. See In re Asbestos, 2016 WL 4264193, at *3 (noting that "implausible explanations have been recognized as evidence of guilty knowledge" and thus support a finding of bad faith (citing Forth v. Diversey Corp., 13-cv-808, 2013 WL 6096528, at *3 (W.D.N.Y. Nov. 20, 2013)). The empty-chair defense is a well-recognized "trial tactic in a multi-party case whereby one defendant attempts to put all the fault on a defendant who . . . settled before trial or on a person who was . . . no[t] named as a party." Black's Law Dictionary 484 (9th ed. 2009) (defining "empty-chair defense"); see also 3 Pattern Discovery: Products Liability § 15.43 (noting that the empty-chair defense is a "trial tactic" in which a defendant "attempt[s] to shift the blame to a person . . . which is not present . . . as a codefendant," and that "by not joining every reasonable defendant, the plaintiff runs the risk that this defense will be used"). Preventing Defendant Chrysler from employing such a defense is thus a plausible reason why Plaintiff would seek to avoid finalizing a settlement with Defendant Fiegura until after a trial at which both Defendants were present, or until after a settlement of Plaintiff's claims against Defendant Chrysler.

Plaintiff's explanation is also supported by Mr. Mayers' September 10, 2015, letter. That letter notes that Plaintiff agreed to accept Defendant Fiegura's policy limits "*at either the settlement of this case or after trial of this matter.*" (Chrysler's Supp. Br., Ex. C (emphasis added.)) This letter suggests that Plaintiff's intent was to keep Defendant Fiegura in the case until a trial or settlement of Plaintiff's claims against Defendant Chrysler, not merely until the one-year deadline for Defendant Chrysler to remove had passed.

I recognize that Plaintiff's explanation of avoiding an empty-chair defense is undermined somewhat by the fact that Plaintiff did not wait to finalize a settlement with Defendant Fiegura until after a trial or a settlement with Defendant Chrysler. Rather, Plaintiff executed the Joint Tortfeasor Release, releasing claims against Defendant Fiegura, on February 21, 2017—while discovery was ongoing in state court, but after the one-year deadline for removal had passed. Plaintiff explains that he chose to finalize a settlement with Defendant Fiegura at that time "for a variety of confidential reasons, including trial strategy and, additionally, because of a determination on the part of Plaintiff's counsel that certain new Tincher-recognized theories of product defect (including the newly-recognized 'consumer expectation' standard) would make [Defendant] Chrysler's ability to blame [Defendant] Fiegura more difficult at trial than that which was originally believed." (Pl.'s Reply. Br. 5-6.)

Plaintiff's explanation refers to a November 2014 decision of the Pennsylvania Supreme Court, Tincher v. Omega Flex, 104 A.3d 328 (Pa. 2014), which "overturned more than 35 years of Pennsylvania product liability precedent." James M. Beck, Rebooting Pennsylvania Product Liability Law: Tincher v. Omega Flex and the End of Azzarello Super-Strict Liability, 26 Widener L.J. 91, 92 (2017). Plaintiff's explanation is less than an obvious one: The decision was rendered nearly two-and-a-half years before Plaintiff executed the Joint Tortfeasor Release, and approximately nine months before Plaintiff even brought the second suit naming Defendant Chrysler. And while Tincher did adopt a "consumer expectation" approach to product liability that "shifts responsibility for protecting the user to the manufacturer," id. at 150 (quoting Tincher, 104 A.3d at 378), Plaintiff does not explain how this new standard makes an empty-chair defense more difficult.

Nevertheless, the timing of the Plaintiff's execution of the Joint Tortfeasor Release does not strongly suggest that Plaintiff's intent all along was to prevent timely removal. The release was executed on February 21, 2017, more than one year and six months after the filing of the complaint, and thus more than six months after the one-year deadline for removal had passed. Compare Heacock v. Rolling Frito-Lay Sales, LP, No. C16-0829-JCC, 2016 WL 4009849, at *4 (W.D. Wash. Jul. 27, 2016) (finding that plaintiff's dismissing a non-diverse defendant more than seven months past the expiration of the one-year deadline for removal was not indicative of bad faith, and noting that courts have found that "even a time period closer to the one-year mark, [such as] two or three months, has been deemed acceptable"), with Tedford v. Warner-Lambert Co., 327 F.3d 423, 426 (5th Cir. 2003) (finding that a "notice of nonsuit" dismissing the sole non-diverse defendant that was signed and postdated for the day after the one-year deadline for removal was indicative of plaintiff's motivation to prevent removal).

In support of its position that a plaintiff's delay in accepting a settlement agreement is indicative of bad faith, Defendant Chrysler relies on two cases in which district courts outside of this Circuit concluded that removing defendants had met their burden, Hiser v. Seay, No. 14–cv–170, 2014 WL 6885433 (W.D. Ky. Dec. 5, 2014) and Comer v. Schmitt, No. 15-cv-2599, 2015 WL 5954589 (S.D. Ohio Oct. 14, 2015), report & recommendation adopted, 2015 WL 7076634 (S.D. Ohio Nov. 13, 2015). However, in both of these cases there was direct evidence of the plaintiff's intent to prevent removal to federal court by delaying acceptance of a settlement until the one-year deadline for removal had passed. In Hiser, the plaintiffs' counsel: (1) stated during a settlement conference that the plaintiffs would not accept the non-diverse defendant's offer because it would allow the diverse defendants to remove; and (2) conceded that plaintiffs' intent was to prevent removal to federal court. 2014 WL 6885433, at *1, 4. Likewise, in Comer,

12

counsel for the non-diverse defendant that had reached a settlement with plaintiff stated in an email that plaintiff had purposely delayed the settlement in order to prevent the remaining, diverse defendant from removing to federal court. 2015 WL 5954589, at *4.[8]

Here, because there is no such direct evidence of Plaintiff's intent to prevent removal to federal court, and because Plaintiff has offered a plausible explanation for maintaining Defendant Fiegura as a Defendant, I cannot conclude that Defendant Chrysler's argument as to the effective settlement agreement satisfies its heavy burden of establishing Plaintiff's bad faith.

          2.      <u>Initiating a Second Suit Naming Defendants Fiegura and Chrysler</u>

Defendant Chrysler also contends that Plaintiff's decision to initiate a second, separate lawsuit naming both Defendants Fiegura and Chrysler, when Plaintiff's first suit against Defendant Fiegura was pending, indicates Plaintiff's intent to prevent removal to federal court. But as discussed above, Plaintiff has explained that he sought to join both defendants in one suit in order to prevent Defendant Chrysler from employing an "empty chair" defense in Defendant Fiegura's absence. While it is not clear why Plaintiff filed a second suit against both Defendants instead of seeking to join Defendant Chrysler in the first suit, Plaintiff's explanation of avoiding an empty-chair defense explains why, in either event, Plaintiff chose not to file a new suit naming only Defendant Chrysler. Accordingly, the filing of the second suit does not assist Defendant Chrysler in meeting its heavy burden of establishing Plaintiff's bad faith to prevent removal.

---

[8] Here, by contrast, Defendant Fiegura's counsel, Mr. Mayers, has provided a letter stating "I do not believe that there has been any bad faith or unreasonable delay on the part of the Plaintiff or Plaintiff's counsel in bringing [this] lawsuit or resolving the claim against my client." (Pl.'s Mot. to Remand, Ex. D.) While Plaintiff highlights this letter, its conclusory statements are of little, if any, use in evaluating Plaintiff's motive in not formalizing a settlement with Defendant Fiegura until February 2017. Nevertheless, the letter illustrates that the type of direct evidence of bad faith present in <u>Comer</u>—a statement from the non-diverse defendant's counsel about the plaintiff's expressed motive—is absent here.

13

### 3. Plaintiff's Failure to Take Discovery From Defendant Fiegura

Finally, Defendant Chrysler contends that a finding of bad faith is supported by Plaintiff's failure to pursue discovery from Defendant Fiegura. Specifically, Defendant Chrysler contends that Plaintiff "did not propound any discovery on [Defendant Fiegura] in either case." (Chrysler's Resp. 8.) Plaintiff does not, in response, point to any specific discovery requests he propounded on Defendant Fiegura during either suit.

In contending that Plaintiff's failure to take discovery from Defendant Fiegura supports a finding of bad faith, Defendant Chrysler relies on Heacock v. Rolling Frito-Lay Sales, LP. However, as the court in Heacock noted, a plaintiff's failure to take discovery is relevant only to the extent that it sheds light on whether a defendant "actively litigate[d] a claim against a defendant *in any capacity*." 2016 WL 4009849, at *3 (emphasis in original). Thus, a plaintiff's failure to propound discovery on a defendant may not be indicative of bad faith if the plaintiff litigated the claim against the defendant by other means—such as by negotiating a settlement. See id. (citing Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d 1225, 1262 (D.N.M. 2014) for the proposition that "active litigation can be determined by whether a plaintiff . . . negotiates settlement, among other things").

Here, Plaintiff and Defendant Fiegura negotiated an agreement during the first suit, under which Plaintiff would not seek recovery beyond Defendant Fiegura's insurance policy limits in exchange for Defendant Fiegura's consent to venue in Philadelphia County. And, as discussed above, it is plausible that Plaintiff's intent was to maintain a claim against Defendant Fiegura through a trial against both Defendants (should Defendant Chrysler not agree to a settlement before trial) in order to prevent Defendant Chrysler from employing an empty-chair defense. Thus, it cannot be said that Plaintiff's failure to take discovery from Defendant Fiegura was a

failure to "actively litigate a claim against [him] *in any capacity*," in a way that would indicate bad faith. Heacock, 2016 WL 4009849, at *3.

Moreover, at least one court within this Circuit has noted that the failure to take discovery before a given date is not circumstantial evidence of bad faith when the plaintiff had no obligation to take discovery before that date. See Rulis, 2015 WL 1344745, at *3 (rejecting defendant's argument that plaintiff's failure to take discovery by the one-year deadline for removal indicated bad faith because, among other things, plaintiff was under no obligation to pursue any particular discovery before the discovery deadline in the case, which had not passed as of the one-year deadline). Likewise here, Plaintiff was not obligated to take any discovery before the discovery deadline, May 1, 2017. Thus, Plaintiff's failure to propound any discovery requests on Defendant Fiegura before executing the Joint Tortfeasor Agreement on February 21, 2017, is not necessarily indicative of bad faith.[9]

In sum, while it is clear that Plaintiff preferred, from the outset, that this case remain in state court, that does not establish bad faith in preventing removal. See Medley v. Infantino, LLC, No. 12-cv-3877, 2013 WL 857369, at *7 (E.D. Pa. Mar. 1, 2013) (noting that while "[i]t was undoubtedly true [that the plaintiff] prefer[red] to try th[e] case in state court for tactical reasons[,] . . . the circumstances of th[e] case d[id] not suggest . . . blatant forum manipulation"). Defendant Chrysler has not met its heavy burden of showing that Plaintiff deliberately delayed resolving his claims against Defendant Fiegura in order to prevent timely removal. Accordingly, and in light of the Third Circuit's clear directives that the removal statutes are to be strictly construed against removal, and that all doubts should be resolved in favor of remand, I will grant

---

[9] Defendant Chrysler also asserts that Plaintiff never served Defendant Fiegura in the second suit, and thus voluntarily compromised his ability to take discovery from Defendant Fiegura. (Chrysler Resp. 8.) However, as noted above, it appears that Defendant Fiegura's counsel accepted service of the Complaint in the second suit. (Chrysler's Supp. Br., Ex. C.)

15

Plaintiff's Motion to Remand and remand this case to the Philadelphia County Court of Common Pleas.

        B.    *Whether Plaintiff Is Entitled to Attorneys' Fees Under 28 U.S.C. § 1447(c)*

Plaintiff also moves for his attorneys' fees related to removal pursuant to 28 U.S.C. § 1447(c). A court, when granting a motion to remand, "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). When determining whether to impose costs under § 1447(c), a district court has broad discretion. Mints v. Educational Testing Service, 99 F.3d 1253, 1260 (3d Cir. 1996). However, the Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin, 546 U.S. at 141.

While Defendant Chrysler has, for the reasons set out above, not satisfied its heavy burden of demonstrating that Plaintiff acted in "bad faith" to prevent removal, the circumstances of this case would make a reasonable person suspicious of Plaintiff's intent. Plaintiff's explanation for delaying his acceptance of Defendant Fiegura's policy limits, while plausible, is not an obvious one. And Plaintiff and Defendant Fiegura's unwritten agreement regarding venue, while not clearly indicative of intent to prevent timely removal to federal court, is arguably circumstantial evidence of such intent. Accordingly, I conclude that it was not objectively unreasonable for Defendant Chrysler to remove the case, and to argue that the conduct set out above is sufficiently indicative of a bad faith.

Moreover, I note that the "bad faith" provision of § 1446(c)(1) is relatively new, and that there are relatively few cases from within the Third Circuit, and nationwide, delineating what constitutes sufficiently persuasive circumstantial evidence of "bad faith." See Twp. of Whitehall v. Allentown Auto Auction, 966 F. Supp. 385, 386 (E.D. Pa. 1997) (finding that an award of fees is "particularly appropriate" where a defect in removal "is plain in law and would have been revealed to counsel for the defendant with a minimum of research"). I also note that there is no indication that Defendant Chrysler attempted to remove this case merely to "prolong[] litigation and impos[e] costs on the opposing party." Rulis, 2015 WL 1344745 at *3 (denying plaintiffs' request for attorneys' fees under § 1447(c) where there was no evidence that defendant removed for the purpose of prolonging litigation and imposing costs on the opposing party).

For these reasons, I will deny Plaintiff's request for his attorneys' fees associated with removal under § 1447(c).

## IV. <u>CONCLUSION</u>

For the reasons set out above, Plaintiff's Motion to Remand will be granted and this case will be remanded to the Philadelphia County Court of Common Pleas. However, Plaintiff's request for attorneys' fees will be denied.

An appropriate Order follows.